UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUDY THOMPSON,

    Plaintiff,

v.                                  CASE #

METROPOLITAN LIFE
INSURANCE COMPANY,

    Defendant.
_____/

# COMPLAINT

The Plaintiff, JUDY THOMPSON (THOMPSON), sues Defendant, METROPOLITAN LIFE INSURANCE COMPANY (METLIFE), and states:

## Jurisdiction and Venue

1. This is an action for relief under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et. seq.

2. This Court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. §1132.

3. METLIFE is an insurance company licensed to transact business in Florida, which is or was at all relevant times engaged in business in this District.

4. THOMPSON was at all relevant times employed by CITIGROUP INC. (CITIGROUP) at a location within this District.

5. CITIGROUP is the Plan Sponsor of an employee benefit plan providing disability benefits to its employees (the Plan).

6. At all relevant times, THOMPSON is and/or was a participant in the Plan incident to her employment.

7. Venue is proper within this District.

## Standard of Review Applicable to this ERISA Action

8. CITIGROUP funded its Plan by purchasing a group policy of insurance (Policy #1137000-2-G) issued by METLIFE. A copy of the Long Term Disability policy is attached hereto as Exhibit "A".

9. METLIFE made benefits determinations under the group policy it issued, including the determination made on Plaintiff's claim.

10. The Plan's terms do not grant discretionary authority to METLIFE. Alternatively, the Plan Administrator or Plan Sponsor did not properly delegate discretion to METLIFE.

11. The Long Term Disability group policy was drafted in its entirety by METLIFE.

12. The Long Term Disability group policy is a contract of adhesion.

13. METLIFE and CITIGROUP use the group insurance policy issued by METLIFE (Exhibit A) as both the Plan document and policy language.

14. No other plan documents exist other than the group insurance policy (Exhibit A).

15. No originating plan document exists that instituted the Plan.

16. No originating plan document or other document exists in which METLIFE reserved any discretionary authority to itself in relation to the Plan.

17. The employees or agents of METLIFE and CITIGROUP did not discuss or correspond about the existence, meaning, or significance of delegating discretionary authority from CITIGROUP to METLIFE.

18. At the inception of the Plan, CITIGROUP did not retain to itself the authority to delegate discretionary authority of any type to an insurance company from which it was to purchase an insurance policy to fund the Plan.

19. At the time it purchased the Long Term Disability group insurance policy from METLIFE, CITIGROUP did not have any discretionary authority which it could delegate to an insurance company.

20. There is no mention of any delegation of discretion to METLIFE within the four corners of the Long Term Disability group insurance policy which funds the Plan.

21. METLIFE was not delegated discretionary authority such that its claim decision is entitled to a discretionary or arbitrary and capricious standard of review, because of one or more of the following:

a) CITIGROUP never had the authority to delegate discretion to METLIFE following the inception of its disability plan;

b) Discretionary authority is a material concept that CITIGROUP never discussed or negotiated with METLIFE;

c) The Long Term Disability group insurance policy is a contract of adhesion drafted entirely by the funding source company which cannot inject discretion into the plan for the first time;

d) If it had the power to delegate discretion, CITIGROUP did not properly delegate discretionary authority over claims decisions to METLIFE.

22. De novo review applies to this action.

23. To the extent that this court determines that de novo review does not apply to this action, METLIFE pays claims from its own general assets as the claims decision maker and funder of the group insurance policy, and METLIFE operates under a conflict of interest.

24. METLIFE is the Plan's claims administrator; handling claims under the insurance policy.

25. Any claims paid under the Long Term Group Insurance Policy, are paid by METLIFE entirely from METLIFE's assets.

26. No assets of CITIGROUP are used to pay claims under the Long Term Disability group insurance policy.

## Claim for Disability Benefits Under the Plan

27. THOMPSON stopped working on October 11, 2021, because of the following medical conditions: chronic vertigo and headaches.

28. THOMPSON was a Class II employee under the Plan.

29. At all relevant times, a Plan participant is and was eligible to receive Long Term Disability benefits when the participant meets the following definition stated in the group insurance policy funding the Plan:

> "Disabled" or "Disability" means that, due to sickness, including a mental or nervous disorder or disease, or, alcohol, drug or substance abuse; pregnancy, or, accidental bodily injury, and while Disabled you are receiving Appropriate Care and Treatment from a Doctor and complying with the requirements of such treatment, and

>If you are a member of Class II:
>
>1. during the Elimination Period you are Totally Disabled;
>2. after your Elimination Period and during the next 60 month period, you are unable to earn more than 80% of your Predisability Earnings at your Own Occupation for any employer in your Local Economy; or
>3. after the 60 month period, you are unable to earn more than 60% of your Predisability Earnings from any employer in your Local Economy at any gainful occupation for which you are reasonable.

30. THOMPSON applied for Long Term Disability benefits under the Plan after stopping working on October 11, 2021.

31. METLIFE terminated THOMPSON's claim for Long Term Disability benefits on May 23, 2022.

32. The basis for METLIFE s initial denial was that THOMPSON no longer met the Plan's definition of disability because it claimed that the medical records in the claim file do not prevent THOMPSON from performing her own sedentary occupation as a Payroll Tax Analyst.

33. THOMPSON submitted a timely appeal of the denial of benefits on June 9, 2022.

34. At all relevant times, THOMPSON met the terms of the Plan's definition of "disabled."

35. THOMPSON suffers from chronic vertigo, Persistent Postural-Perceptual Dizziness, unsteadiness, migraines, and cognitive impairment.

36. On June 15, 2022, THOMPSON'S treating Neurologist, Edwin Perguero, M.D., wrote a letter stating his professional opinion that THOMPSON was unable to work due to her conditions. In his letter, Dr.

Perguero states that THOMPSON has difficulty performing daily activities and is unable to focus for long periods of time.

37. Similarly, THOMPSON's family physician, George Davis DO, on June 15, 2022, sent a letter to METLIFE stating he did not disagree with the restrictions and limitations provided by METLIFE's Independent Medical Consultant, but recommended referral to a specialist physician.

38. On July 13, 2022, THOMPSON's Neurologist, Dr. Perguero wrote a second letter to METLIFE stating his unchanged medical opinion that THOMPSON is unable to work due to her inability to focus for long periods of time.

39. THOMPSON's treating providers have not issued a release to return to work.

40. On August 2, 2022, METLIFE upheld its original decision and denied THOMPSON's appeal, stating that the medical records in the claim file do not prevent THOMPSON from performing her own sedentary occupation as a Payroll Tax Analyst.

41. METLIFE's appeal decision letter did not assess THOMPSON's restrictions and limitations due to her vertigo and/or vestibular disfunction, such as cognitive impairments, time off task due to vertigo symptoms, or inability to focus.

42. METLIFE has refused to pay the benefits sought by THOMPSON and as grounds for such refusal has alleged that Plaintiff does not meet the definition of disability in the Plan.

43. With respect to all claims made herein, THOMPSON has exhausted all administrative/pre-suit remedies.

44. THOMPSON is entitled to certain benefits under the Plan consisting of benefits for Long Term Disability from May 23, 2022, through the date of filing this action.

45. THOMPSON's gross plan benefit is $3,10000. per month.

46. There are 5.3 months of past-due monthly benefit payments owed through the date of filing this action

47. METLIFE has deprived THOMPSON of the aggregate sum of $16,326.67

48. Plaintiff is entitled to benefits herein because:

   a. The benefits are permitted under the Plan.

   b. Plaintiff has satisfied all conditions to be eligible to receive the benefits.

   c. Plaintiff has not waived or relinquished entitlement to the benefit.

49. Each monthly benefit payment owed is a liquidated sum and became liquidated on the date the payment was due and payable. Plaintiff seeks prejudgment interest on each such payment.

50. Pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), THOMPSON is entitled to an award of reasonable attorney fees and costs incurred in an action brought under ERISA. Plaintiff has been required to obtain the undersigned attorney to represent her in this matter and has agreed to a reasonable attorney fee as compensation to him for his services.

WHEREFORE, the Plaintiff, JUDY THOMPSON, asks this Court to enter judgment against the Defendant, METROPOLITAN LIFE INSURANCE COMPANY, a foreign corporation, finding that:

(1) The Plaintiff is entitled to Long Term Disability benefits from May 23, 2022, through the filing of this lawsuit; and

(2) The Plaintiff must be awarded benefits in the amount not paid to the Plaintiff from May 23, 2022, to the date of filing this lawsuit total of $16,326.67 together with prejudgment interest at the legal rate on each monthly payment from the date it became due until the date it is paid; and

(3) The Plaintiff must be awarded reasonable attorney fees and costs incurred in this action; and

(4) For such other and further relief as this Court deems just and proper, including but not limited to:

    a. a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court, without need to file a new application for benefits, and

    b. remanding Plaintiff's claim to the Plan Administrator for further action to address continuing benefits after the final date of benefits awarded by this Court, and

    c. ordering Defendant to advise Plaintiff's former employer or any other necessary entity that benefits in this action were properly paid through the date of this Court's Order awarding benefits for purposes of coordinating or reinstating

any ancillary benefits which should properly be paid or for which coverage should be awarded as a result of Plaintiff's receipt of disability benefits under the Plan.

Signed this 3rd day of November, 2022.

/s/ William C. Demas
WILLIAM C. DEMAS, ESQUIRE
Florida Bar # 0142920
TUCKER DISABILITY LAW, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:   (727) 572-5000
Fax:   (727) 571-1415
demas@tuckerdisability.com
*Lead Attorney and Lead Counsel for the Plaintiff*

/s/ John v. Tucker
JOHN V. TUCKER, ESQUIRE
Florida Bar # 0899917
TUCKER DISABILITY LAW, P.A.
5235 16th St. North
St. Petersburg, FL  33703
Tel.:   (727) 572-5000
Fax:   (727) 571-1415
tucker@tuckerdisability.com
*Attorney and Co-counsel for the Plaintiff*